Williams, C. J.
1. One ’ contention of the plaintiff in error is, that the municipal authorities of the city of Cincinnati, the owner of the line of railway in question, cannot constitutionally be invested with the power to make a sale of the road, and the act of March 12, 1887, purporting to confer that power is, therefore, without validity; being, it is claimed, in conflict with section 6, of article 8, of the constitution of this state, which prohibits municipal corporations from raising money for, or loaning their credit to, or in aid of joint stock companies, corporations or associations, or becoming stockholders therein. In support of. this contention, the case of Taylor v. Commissioners, 23 Ohio St., 22, is relied on, where, in holding the act there under review, which was similar in some respects to the statute under which the road in question was constructed, tobe in contravention of the constitutional inhibition mentioned, stress is placed upon a provision that roads constructed under that act might be leased or sold before or after the completion of the whole, or any part thereof. That provision, it was there held, in connection with the general scheme of the act, gave the public authorities opportunity to accomplish by indirection, what the constitution was designed to prohibit; that it was within the purview of the act that roads or parts of roads built under it should, and would pass into the hands and control 'of railroad corporations, as their construction proceeded, and when completed become absorbed in the line or system of railroad operated by such corporation ; so that, the statute not only afforded opportunity for the public .authorities to raise money for, and loan their credit to, and in aid of the corporation, but that was the practical effect *109 of the statute when put into operation. In distinguishing that act'from the one under which the railway here involved was built, the court, speaking of the latter, said : “The proprietary interest in the road when completed, is as fully in the municipality as that of any other of its public works. It is the road owned by the municipality that is authorized to be leased. The public use for which the road was built is to be preserved, and the power of leasing the right .to use and operate it is designed only as a mode of making such use available to the public. ”
The railway in question here, was built and acquired by the city of Cincinnati after the act of May 4, 1869, had been held valid, in the case of Walker v. Cincinnati, 21 Ohio St., 14. The constitutionally of the act is there placed upon the ground that the construction of an improvement of that kind, to be owned exclusively by the municipality, does not involve an alliance of public and private capital or credit, nor constitute a loan of municipal credit to, or raising money for, Or in aid of other parties, incorporated, or unincorporated, and, therefore, it is as competent, by legislation to authorize municipal corporations to construct improvements of that nature, and provide means therefor by taxation, when deemed essential to the public interests, as to authorize them to acquire and hold property for other needed public uses, and make other municipal improvements. True, the act only makes provision for leasing roads constructed under, its sanction, and does not, in terms authorize their sale; it may not have been deemed advisable at the time of its enactment to confer such authority. But, we think, it does not follow that the power to make a sale of the road *110 must be denied for all time, though exigencies should arise which would seem to require the sale, or render it desirable and advantageous to the owner. A sale made in good faith and for a fair value, under such circumstances, cannot properly be characterized as a loan of the credit of the municipality, directly or indirectly to, or in aid of the purchaser. The power of dispositionis generally an inseparable incident of ownership ; and the ownership of this property by the city of Cincinnati is not different from that of other property belonging to it for other public uses, nor is its sale, by the duly constituted municipal authorities, when authorized by appropriate legislation, within the constitutional inhibition referred to, nor any of which we are aware,
It is further claimed, in this connection, that the contemplated sale, if consummated, will have the effect of making the city of Cincinnati interested as a stockholder in the company that shall obtain control of the road, or, constitute a loan of its credit to that company. This claim is based upon the third paragraph of the proposition of purchase, which stipulates that the purchasers, in addition to the other consideration named, will ‘ ‘pay in cash a sum equal to ten per cent, of the annual gross earnings of said line of railway in excess of $4,500,000 from and after October 1, 1902.” But it is obvious the stipulation cannot have the effect claimed for it, nor any other effect than to create an obligation to pay in the future, upon the happening of the specified contingency, an additional sum as part of the purchase price of the road.
2. Another contention of the plaintiff in error is, that the proposed sale will impair the obliga *111 tion of its contract with the bondholders, and cannot be made without their consent, which has not been obtained. It is undoubtedly true that the law, under which the bonds were issued, entered into and became part of the contract with the holders, and any change in the law which affects their rights cannot be operative as against them without their consent. The precise claim here made is, that the statute under which the road was built and the bonds were issued, contemplates that the road shall always remain the property of the city, and under the control of the trustees, to be kept under lease by them, so as !to provide a net income which can be used in payment of the interest on the bonds, and assist in creating a fund for the payment of the principal; and, as the trustees provided for by the statute are trustees of the bondholders, as well as for the city, it is the right of the former to insist that the trust shall be controlled and executed by the agencies, and in the manner so contemplated.
The ownership of the road by the city, resulted from its construction by the city with its own means; and, as before observed, that ownership is not different from that of other property, the complete title to which is vested in the city, for public purposes. We find no requirement in the statute providing for the construction of the railway, that its proprietorship shall continue perpetually in the city, or that excludes its power to alien the same, when, and as may be provided by legislation thereafter enacted. Provision is made for leasing the road, but not requiring that it shall always be kept under lease; that might be impossible. That provision is evidently designed for the benefit of the municipality, as a source of in *112 come, and to enable it to relieve the tax payers to that extent by using the income in the construction of the road, and payment of indebtedness created therefor. The failure to lease the road, or derive a net income therefrom, does not relieve the city of its obligation, to any extent, to the bondholders ; nor, is it apparent how their security can be impaired on that account. The obligation is met, and is to be met by taxation, except in so far as any net income may be used in reduction of the amount required to be so raised; and as any net income must necessarily pass through the proper official agencies of the city, before reaching the bondholders, as must also the amounts raised by taxation, and the city is ultimately liable in the latter mode for the payment of the whole bonded indebtedness, principal and interest, the income, as a matter of security, rises no higher than the corporate liability of the city, since its application to that indebtedness can be enforced only by the enforcement of the corporate obligation to apply it; and complete payment can as well be made or enforced through the process of taxation alone.
Besides, by the proposition of purchase which the parties are desirous of completing, the offer is to buy the line of railway subject to the present lease which does not expire until after the maturity of the bonds; so that, the holders will have the benefit of whatever security or advantage there may be in keeping the road under lease, until the payment of the entire indebtedness, or default giving rise to the right of foreclosure. They will, therefore, be in no worse position if the sale be made, than they now are.
*113 Again, the bondholders are not here interposing any objection to the-sale, nor complaining that it will result in any impairment of their contracts. It is unusual for a debtor to object to an act or proceeding on the ground that it will impair his obligation. It is not clear, to say the least, how he can sustain, or reasonably apprehend such irreparable injury as will warrant the interference of a court of equity in his behalf, by injunction. As the creditor is the only party who can be injuriously affected, the remedy belongs to him.
3. It is further contended that the proposed sale cannot be legally effected without the consent of the states of Kentucky, and Tennessee. The petition does not allege that .either of those states has any property interest in the line of railway, or any part of it, or in any of the appurtenances, or the income. The ownership of the entire property, it is conceded, is in the city of Cincinnati. Those states, throug’h their legislatures, have granted to the owner certain privileges and franchises which were necessary to the construction of the road, within their respective territorial limits, and are also necessary to its operation and maintenance. These franchises add materially to the value of the property. But our attention has been called to no legislation of either of those states which places any restriction upon the owner’s right of sale or disposition of the property, or which renders the consent of either necessary to its 'sale. If the purchaser is willing to assume the risks that may arise, if any shall, with respect to the continuance of the franchises granted by the legislatures of the states referred to, the city of Cincinnati can have no interest in their continued existence, provided the payment of the *114 purchase price is well secured, for it can suffer no injury from that source. The offer shows this difficulty has received the attention of the proposed purchasers, and that the situation in that respect is fully appreciated by them.
In regard to any danger arising from that source to the security of the bondholders, it has already been observed they are making no objection here to the consummation of the sale; and inquiry into their rights will be in time when an objection comes from them.
4. Finally, it is claimed that the only sale of the railway which the act of March 12, 1887, authorizes, is a sale for cash. The authority conferred by the statute is to make the sale upon such terms of payment as shall be satisfactory to the sinking fund trustees, and ratified at the election held under the act. The act nowhere, in terms, requires the purchase price to be paid in cash. But, it is said, a sale imports a disposition of property for cash; and the payment of the price in cash is, .therefore, necessary to a valid sale under the statute. The payment, or agreement to pay the purchase price of property in money, is essential to a sale of it, as .distinguished from an exchange or bartér; but sales may be made on credit wholly, or partially, as well as for cash; and the statute under consideration excludes the idea that payment in cash is essential to a sale under its provisions, by authorizing the sale to be made upon terms of payment.
Whether the offer of purchase which the sinking fund trustees have declared satisfactory to them, is an advantageous one to the- city, or not, or whether it will be judicious to make any sale of the railway property, are questions with which the *115 court is not concerned; their decision belongs, under the statute, to the proper official body of the city, and to its inhabitants who shall be called upon to express themselves at the election for which the statute makes provision. We see no valid legal objection to the steps thus far taken toward the accomplishment of the sale it is proposed to make, nor any to the statute under which they have been taken.

Judgment affirmed.